# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY W. WEILACHER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-1530 |
| ) | |
| v. ) | Judge Alan N. Bloch |
| ) | Magistrate Judge Cathy Bissoon |
| MICHAEL J. ASTRUE, COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Plaintiff's motion for summary judgment (*Document No. 9*) be denied, that the Defendant's motion for summary judgment (*Document No. 11*) be granted, and that the administrative decision of the Commissioner of Social Security ("Commissioner") be affirmed.

### II. REPORT

#### A. Background

Plaintiff Randy W. Weilacher ("Weilacher") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on March 23, 2006, alleging disability as of October 1, 2001. R. at 10, 86, 91. The applications were administratively denied on July 27, 2006. R. at 53, 58. Weilacher responded on September 5, 2006, by filing a timely request for an administrative hearing. R. at 64. On January 3, 2008, a hearing was held before Administrative Law Judge Lamar W. Davis (the "ALJ"). R. at 18. Weilacher, who was represented by counsel, appeared and testified at the

1

hearing. R. at 21-43. George Strauss ("Strauss"), an impartial vocational expert, also testified at the hearing. R. at 43-48. In a decision dated February 27, 2008, the ALJ determined that Weilacher was not "disabled" within the meaning of the Act. R. at 7-17. The Appeals Council denied Weilacher's request for review on October 5, 2009, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. at 1. Weilacher commenced this action on November 17, 2009, seeking judicial review of the Commissioner's administrative decision. Doc. Nos. 1 & 2. Weilacher and the Commissioner filed motions for summary judgment on March 6, 2010, and April 7, 2010, respectively. Doc. Nos. 9 & 11.

**B.**     **Standard of Review**

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial

evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

4

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

### C. **The ALJ's Decision**

In his decision, the ALJ determined that Weilacher had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 12. Weilacher was found to be suffering from degenerative disc disease of the cervical and lumbar spine, migraine headaches, depression and chronic pain syndrome. R. at 12-13. His degenerative disc disease and migraine headaches were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). R. at 12. The remaining impairments were deemed to be "non-severe." R. at 12-13. The ALJ concluded that Weilacher's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 13.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Weilacher's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that he has upper extremity limitations that would preclude more than incidental (defined as totaling not more than 1/6 of a routine eight hour work shift) overhead reaching or unsupported forward extension; no rapid, repetitive motion of the upper extremity; no more than incidental postural maneuvers, including stooping, kneeling, crawling, crouching, balancing, and climbing; only incidental exposure to hazards, including unprotected heights and dangerous machinery; no exposure to temperature extremes, defined here as less than forty degrees continuously; he must be able to sit or stand at his option; and he can perform only simple, routine, and repetitive work involving no more than incidental use of independent judgment and discretion and no piece work production rate pace.

5

R. at 13.  In light of this assessment, it was determined that Weilacher could not return to his past relevant work as a stocker, a heavy plastics worker, a newspaper delivery worker, or an oil rig worker.  R. at 15-16.

Weilacher was born on October 26, 1964, making him thirty-six years old as of his alleged onset date and forty-three years old as of the date of the ALJ's decision.  R. at 16, 21.  He was classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. §§ 404.1563(c), 416.963(c).  He had the equivalent of a high school education and an ability to communicate in English.  R. at 16, 22; 20 C.F.R. §§ 404.1564, 416.964.  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Weilacher could work as a ticket taker, gas station self-service attendant, or dietary aide.  R. at 16.  Strauss's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[1]  R. at 46.

### D. <u>Analysis</u>

In support of his motion for summary judgment, Weilacher raises only two issues.  First, he argues that the ALJ erred in crediting the opinion of a consultative medical examiner rather than the opinion of his treating physician.  Doc. No. 10 at 5-9.  Second, he contends that the ALJ erred in finding his testimony to be less than fully credible.  *Id.* at 9-12.  The Court's consideration of the instant case will be limited to these two issues.[2]  *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000).

---

[1] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

[2] In his brief, the Commissioner points out that the Court's consideration is limited to the specific issues raised by Weilacher.  Doc. No. 12 at 14-15.  Because Weilacher challenges only the ALJ's evaluation of the medical opinion and testimonial evidence in this case, the Court has no occasion to consider whether the ALJ's abbreviated analysis at the third step of the sequential evaluation process was sufficient to satisfy the requirements of *Burnett v.*

6

The record indicates that Weilacher has a long history of migraine headaches, numbness in his left lower extremity, and pain in his neck, back, hips, right shoulder, and right upper extremity. R. at 229. In a letter to Dr. Robert H. Baker dated December 21, 2005, Dr. Robert M. Landfried and Certified Registered Nurse Practitioner Diane M. Horneman ("Horneman") opined that Weilacher was not "disabled from all types of work," and that "possible vocational rehabilitation" options were available to him. R. at 231. Dr. Landfried and Horneman rendered their opinion based on a "pain management consultation" (and related physical examination) conducted at the University of Pittsburgh Medical Center's Pain Management Clinic. R. at 229-232.

On July 13, 2006, Dr. Heather J. Porter performed a consultative physical examination of Weilacher in connection with his applications for DIB and SSI benefits. R. at 196-199. During the course of the examination, Weilacher's range of motion was tested. R. at 198. Based on her examination findings, Dr. Porter reported that Weilacher could engage in a limited range of "light" work activities.[3] R. at 194-195, 198-199. Specifically, Dr. Porter indicated that Weilacher could frequently lift or carry objects weighing up to twenty-five pounds, and that his

---

*Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000). R. at 13. The United States Court of Appeals for the Third Circuit has indicated that an administrative law judge's step-three analysis must be sufficiently developed to facilitate meaningful judicial review. *Jones v. Barnhart*, 364 F.3d 501, 504-505 (3d Cir. 2004). This generally means that the specific Listing (or Listings) under consideration must be identified in the administrative opinion under review. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007). The ALJ did not explicitly state which Listings were being considered in this case. R. at 13. It is also worth noting that the ALJ's hypothetical question to Strauss did not completely correspond with the subsequent finding concerning Weilacher's residual functional capacity. The hypothetical question referred to an individual who was limited to incidental overhead reaching with, and unsupported forward extension of, *only the left* upper extremity. R. at 45. The ALJ later found Weilacher to be *generally* limited to incidental overhead reaching with, and unsupported forward extension of, an upper extremity. R. at 13. Weilacher does not argue that the limitations included within the ALJ's residual functional capacity assessment (but omitted from the hypothetical question) would compromise an individual's ability to perform tasks associated with the jobs identified by Strauss. Consequently, the Court expresses no opinion as to whether the ALJ's hypothetical question adequately conveyed Weilacher's limitations to Strauss. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

pushing and pulling abilities were otherwise "unlimited." R. at 195. Weilacher told Dr. Porter that he would experience pain if he had to sit for one to two hours at a time without an opportunity to stand or walk. R. at 198. Dr. Porter determined that Weilacher could stand or walk for up to four hours and sit for up to eight hours during the course of an eight-hour workday, provided that he was afforded the opportunity to sit or stand at his option. R. at 195. She listed the pain that Weilacher experienced while sitting for prolonged periods of time as the basis for her finding that he needed a sit/stand option. R. at 195. Weilacher's reaching ability was deemed to be limited by pain in his back and right shoulder. R. at 194. Dr. Porter asserted that Weilacher was limited to only occasional bending, kneeling, stooping, crouching, balancing and climbing, and that his exposure to temperature extremes, wetness and humidity needed to be limited. R. at 194. She noted that Weilacher's pain would worsen if he were to exceed such limitations. R. at 194.

Dr. Paul Lange, Weilacher's primary care physician, opined on January 30, 2007, that Weilacher could stand or walk for only one to two hours during the course of an eight-hour workday.[4] R. at 222. Dr. Lange further reported that Weilacher could not sit for up to one hour during the course of a typical day. R. at 223, 225. Limitations of this kind would preclude an individual from performing work at the "sedentary" level of exertion.[5]

---

[4] On January 30, 2007, Dr. Lange also completed a report indicating that Weilacher had a "severe" mental impairment that seriously compromised his ability to work. R. at 220-221. At that time, Weilacher stated that he had entertained "suicidal thoughts." R. at 244. Dr. Lange determined that Weilacher was suffering from depression and instructed him to take Prozac on a daily basis. R. at 244. By April 18, 2007, Weilacher's depression had been fully alleviated, and he no longer needed his medication. R. at 243. The ALJ found Weilacher's depression to be "non-severe," and Weilacher does not take issue with that finding. R. at 12-13. The Court notes that an impairment which does not satisfy the Act's twelve-month durational requirement cannot serve as a basis for benefits under Titles II and XVI. *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002); 20 C.F.R. §§ 404.1522, 416.922.

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

8

20 C.F.R. §§ 404.1567(b), 416.967(b) (recognizing an "inability to sit for long periods of time" as a limitation precluding a claimant from performing sedentary work).

On December 10, 2007, Dr. Lange reiterated his view that Weilacher was incapable of performing sedentary work. R. at 233-237. Dr. Lange also asserted that, at *most*, Weilacher could frequently lift or carry objects weighing up to three pounds and occasionally lift or carry objects weighing up to ten pounds. R. at 235. An individual with that degree of limitation would not be capable of performing light work. 20 C.F.R. §§ 404.1567(b), 416.967(b). Hence, Dr. Lange's opinion, if fully credited, would have warranted a finding of statutory "disability" in this case.

In determining that Weilacher was capable of performing a limited range of light work, the ALJ declined to give "controlling weight" to Dr. Lange's assessment. R. at 15. Dr. Porter's opinion was accorded "great weight" by the ALJ. R. at 15. The ALJ also afforded "considerable weight" to Dr. Landfried's opinion that Weilacher was not "disabled from all types of work" in determining that jobs consistent with Weilacher's residual functional capacity existed in the regional or national economy. R. at 15.

Weilacher argues in his principal brief that the ALJ should have credited the opinion of Dr. Lange rather than that of Dr. Porter.[6] Doc. No. 10 at 5-9. In a reply brief filed in response to the Commissioner's principal brief, Weilacher contends that Dr. Landfried's opinion was too general to be of significant probative value. Doc. No. 13 at 1. The problem with Weilacher's argument is that it runs counter to the deferential nature of this Court's review under § 405(g). It was the prerogative of the ALJ "to choose the medical opinion of one doctor over that of

---

[6] Although Dr. Lange's opinion appears to have been that Weilacher was disabled, a treatment note dated September 10, 2007, suggested the contrary. R. at 241. In that treatment note, Dr. Lange expressed an intention to certify Weilacher "as being employable with certain weight lifting restrictions." R. at 241. An administrative law judge is entitled to reject evidence that is "internally contradictory." *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). It is not the role of a reviewing court to reconsider the underlying "factual inquiry" previously conducted by the Commissioner. *Hartranft*, 181 F.3d at 360. It is beyond dispute that a well-supported residual functional capacity assessment provided by a consultative medical examiner can constitute "substantial evidence" of a claimant's ability to work, even where that assessment is contradicted by a report supplied by the claimant's treating physician.[7] *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)(observing that "one medical report by an examining physician may constitute substantial evidence of a claimant's physical condition"); *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(stating that a consultative medical examiner "may bring both impartiality and expertise" to the adjudicatory process, whereas a treating physician "may too quickly find disability"). That is especially true in this case, since Dr. Porter's opinion of non-disability was buttressed by Dr. Landfried's assessment.

At the hearing, the ALJ questioned Weilacher about Dr. Porter's examination. R. at 27-29. Weilacher described Dr. Porter's demeanor as "nonchalant." R. at 27. He responded in the affirmative when asked whether he believed that Dr. Porter had examined him "in a hurry." R. at 27. Nevertheless, Weilacher was unable to identify any fact concerning his condition or medical history that had been unknown to Dr. Porter at the time of the examination, or that had been omitted from her examination findings. R. at 27. He acknowledged that Dr. Porter's examination report had correctly described his medical history. R. at 28. Although Weilacher testified that he had been left with the subjective "impression" that Dr. Porter was indifferent to his plight, he was not able to specifically impugn the manner in which she had examined him or the particular medical findings that she had made. R. at 28-29. The documentary record of the

---

[7] This is not a situation in which the opinion of a treating physician has been rejected solely on the basis of a contrary assessment provided by a non-examining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

10

examination was sufficiently comprehensive to enable the ALJ to conclude that Dr. Porter had evaluated Weilacher's impairments (and resulting limitations) in a competent manner. R. at 194-199. The Court cannot set the ALJ's findings aside, or question the reliability of Dr. Porter's examination report, simply on the basis of Weilacher's unspecified discomfort concerning the manner in which the examination was conducted.

Weilacher testified at the hearing that he could only sit for approximately one hour, at which point he would need to lay down for roughly thirty minutes. R. at 30, 36. He complained of periodic numbness in his left arm and an occasional inability to move his neck. R. at 31. He explained that these symptoms would typically manifest themselves once or twice per week, and that they would last anywhere from "all day" to "five minutes." R. at 33-34. Weilacher declared that he could stand for approximately thirty minutes, or walk the distance of a football field, before he would need to rest. R. at 38. He stated that he would experience migraine headaches two to three times per week. R. at 42. Nonetheless, he acknowledged that his migraine headaches had been significantly improved by Imitrex. R. at 29.

The ALJ determined that Weilacher's statements "concerning the intensity, persistence and limiting effects" of his impairments were "not entirely credible." R. at 15. Weilacher argues that the ALJ should have accorded more weight to his subjective complaints. Doc. No. 10 at 9-12. The ALJ was, of course, required to give serious consideration to Weilacher's testimony concerning the degree to which his impairments would inhibit his ability to work. *Sykes v. Apfel*, 228 F.3d 259, 266, n. 9 (3d Cir. 2000); *Mason*, 994 F.2d at 1067-1068. Nevertheless, the ALJ was not required to accept at face value Weilacher's contention that his impairments were sufficiently "debilitating" to warrant a finding of disability. *Locke v. Massanari*, 285 F.Supp.2d 784, 798 (S.D.Tex. 2001). Neither Dr. Porter nor Dr. Landfried believed Weilacher to be

incapable of working, and the ALJ was entitled to rely on their medical opinions to reject the contradictory portions of Weilacher's testimony. *Mason*, 994 F.2d at 1067-1068 (recognizing "contrary medical evidence" as a legitimate basis for discounting a claimant's subjective complaints). Where a conflict in the evidence exists, it is emphatically the province of the Commissioner to resolve that conflict. *Lambertson v. Astrue*, 625 F.Supp.2d 160, 175-177 (D.Del. 2009). The Court has no basis for disturbing the findings made by the ALJ.

In determining whether the ALJ's decision in this case is "supported by substantial evidence," the Court must show "deference to his evaluation of the evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions." *Diaz*, 577 F.3d at 506. The ALJ's findings were grounded in assessments provided by competent medical professionals. Accordingly, the administrative decision of the Commissioner should be affirmed.

**E.**      **Conclusion**

For the foregoing reasons, it is respectfully recommended that Weilacher's motion for summary judgment (*Document No. 9*) be denied, that the Commissioner's motion for summary judgment (*Document No. 11*) be granted, and that the decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by October 28, 2010. Responses to objections are due by November 11, 2010.


October 14, 2010                                  _____
                                                  Cathy Bissoon
                                                  United States Magistrate Judge

cc (via ECF notification):

All counsel of record